## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER LEAR, | Case No. 2:23-cv-1773 |
| *Plaintiff*, | |
| v. | |
| FAYETTE COUNTY EMERGENCY MANAGEMENT AGENCY, | |
| *Defendant*. | **JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Jennifer Lear (hereinafter, "Plaintiff"), by and through the undersigned counsel, files the within Complaint in Civil Action against Fayette County Emergency Management Agency (hereinafter, "Defendant"), averring as follows:

## PARTIES

1. Plaintiff is an adult individual who resides at 51 Rose Boulevard, Uniontown, Pennsylvania 15401.

2. Defendant is a governmental entity controlled and supervised by Fayette County, which is a County of the Fourth Class in the Commonwealth of Pennsylvania. Defendant has a 911 call center that is located at 24 East Main Street, Uniontown, Pennsylvania 15401 (hereinafter, the "Facility").

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings this lawsuit asserting that Defendant violated the Americans with Disabilities Act

of 1990, as amended by the Americans with Disabilities Act Amendments of 2008, 42 U.S.C. § 1201, *et seq.* (hereinafter, the "ADA") and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (hereinafter, "FMLA").

4. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a) because Plaintiff alleges violations of the Pennsylvania Human Relations Act (hereinafter, the "PHRA"), 43 P.S. § 951, *et seq.* Ultimately, as explained more thoroughly below, the factual basis for the PHRA claim is so related to the ADA claim that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this Court because Plaintiff is a resident and citizen of Pennsylvania and a substantial part of the events or omissions giving rise to the claims averred herein occurred in Fayette County, Pennsylvania, which is located within the geographical confines of the United States District Court for the Western District of Pennsylvania. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

6. With respect to the ADA claim, Plaintiff has satisfied all procedural and administrative requirements set forth in 29 U.S.C. § 626 and 42 U.S.C. § 2000e-5 in that:

   a. Plaintiff filed a timely administrative complaint on April 24, 2023, with the Equal Employment Opportunity Commission (hereinafter, the "EEOC"), alleging that Defendant terminated her because of her disability;

   b. On July 17, 2023, Plaintiff received permission for the right to sue from the EEOC, wherein Plaintiff was afforded ninety (90) days within which to timely file an action in federal or state court. With the filing of the instant Complaint, Plaintiff has further satisfied any procedural requirements. A true and correct copy of the determination and right to sue is attached hereto, made a part hereof, and identified as **Exhibit A**.

7. This Court has personal jurisdiction over Defendant because these defendants routinely and regularly conduct business in the Commonwealth of Pennsylvania and routinely and

regularly solicit business in Pennsylvania. Further, as averred more fully below, Defendant violated numerous statutory provisions and Pennsylvania common law, and all the events giving rise to their unlawful conduct, including the collective harm that Plaintiff sustained therefrom, occurred in Pennsylvania. As such, this Court, at bare minimum, may exercise personal jurisdiction over Defendant because it has the required minimum contacts with this forum for purposes of Pennsylvania's long-arm statute and the Due Process Clause of the United States Constitution.

## GENERAL ALLEGATIONS

8. In March 2019, Plaintiff commenced her employment with Defendant as a dispatcher receiving and addressing calls made from the public through the 911 emergency assistance program.

9. In January 2022, Plaintiff submitted a request with Defendant to invoke leave time pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (hereinafter, "FMLA"). Shortly thereafter, Plaintiff obtained certification from her family physician for the following medical conditions: anxiety, attention-deficit/hyperactivity disorder (hereinafter, "ADHD"), and asthma (hereinafter, and collectively, the "Disabilities").

10. Most importantly, in certifying Plaintiff's Disabilities for the FMLA, Plaintiff's family physician approved Plaintiff for intermittent leave time, thereby authorizing her to utilize leave time at the beginning of her work shift when medically necessary.

11. At all times relevant hereto, the Disabilities, both individually and collectively, significantly impaired Plaintiff's ability to engage in her major life activities including, but not limited to, working, walking, breathing, concentrating, sleeping, performing personal hobbies, and completing tasks associated with maintaining Plaintiff's household.

12. From January 2022 throughout May 2022, Plaintiff invoked approximately ten (10) full days of leave time, on a sporadic basis, under the FMLA because she was experiencing a heightened effect of the symptomologies associated with her Disabilities.

13. In early May 2022, Defendant provided Plaintiff with a letter stating that from February 2022 to April 2022, Plaintiff was tardy for work on three (3) separate occasions, all of which occurred by one (1) minute or less.

14. Because Plaintiff was a member of the union and subject to the terms and conditions of a collective bargaining agreement under the Public Employee Relations Act, 43 P.S. § 1101.101, *et seq.* (hereinafter, "PERA"), a hearing was held, after which an arbitrator ordered that Plaintiff be suspended for a single day.

15. From May of 2022 to October of 2022, Plaintiff experienced three (3) episodes wherein her Disabilities manifested above the ordinary levels of impairment. Plaintiff attempted to utilize her approved FMLA Leave for each episode, which are delineated in greater detail below, and all three requests were correspondingly denied by Defendant.

16. On May 25, 2022, Plaintiff was late for work because Plaintiff's Disabilities had manifested significantly, and Plaintiff was then experiencing difficulty breathing and required time to recover from said Disabilities prior to commuting to the Facility.

17. On June 26, 2022, Plaintiff had to take her daughter to the emergency room which triggered a significant episode related to Plaintiff's Disabilities. Plaintiff experienced, amongst other things, a period of cognitive confusion and impairment which required Plaintiff to once again recover prior to traveling to work.

18. On October 3, 2022, Plaintiff experienced a Disability-related episode specifically due to her asthma wherein she was experiencing significant difficulty breathing. This delayed

Plaintiff's arrival to the Facility as she required the use of her treating medications that were prescribed by her physician to treat her Disabilities in the event of such an emergent event.

19. Although Plaintiff sought to invoke FMLA leave for the three above instances on which she was tardy, i.e., May 25, 2022, June 26, 2022, and October 3, 2022, Defendant denied the requests on the grounds that an employee could not use FMLA leave time to cover instances of tardiness. However, in so determining, Defendant erred in its legal and/or factual analysis of the certification that Plaintiff's family doctor had provided it.

20. Moreover, the three instances of tardiness, mentioned directly above, were directly related to Plaintiff's Disabilities because symptomatic presentation of a disability is part of—and cannot be separated from—that disability.

21. In accepting and approving the certification from Plaintiff's family physician for FMLA leave, Defendant expressly acknowledged that Plaintiff suffered from the Disabilities.

22. On November 16, 2022, Defendant placed Plaintiff on suspended pay pending an investigation. Shortly thereafter, on November 21, 2022, Defendant terminated Plaintiff.

## COUNT I
## DISCRIMINATORY TERMINATION IN VIOLATION
## OF THE ADA AND THE PHRA
## 42 U.S.C. § 1201, *et seq.*; 43 P.S. § 951, *et seq.*

23. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

24. To establish a prima facie case of discrimination under the ADA, Plaintiff must show: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the employer; and (3) she suffered an otherwise adverse employment decision as a result of

discrimination.  See, *McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir., filed May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

25. As repeatedly averred throughout this Complaint, Plaintiff is disabled within the meaning of the ADA and the PHRA.

26. As averred previously, Plaintiff is a highly qualified individual who was competent to successfully complete the necessary functions of her job, as evidenced by Plaintiff's longevity with Defendant.

27. On or about January of 2022, Plaintiff personally and verbally informed Defendant of her Disabilities via certification from her family physician.

28. Plaintiff's Disabilities never impaired her ability to perform her work.

29. On or about November 16, 2022, Defendant placed Plaintiff on suspended pay pending an investigation and on November 21, 2022, Defendant terminated Plaintiff's employment.

30. Given the close temporal proximity from the time when Plaintiff informed Defendant of her Disabilities to the time Defendant terminated Plaintiff, it is necessarily inferable that Defendant terminated Plaintiff on the basis of her Disabilities.

31. As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including but not limited to, wage loss, loss of income, further deterioration of his Disability, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
### FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA AND THE PHRA
42 U.S.C. § 1201, *et seq.;* 43 P.S. § 951, *et seq.*

32. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

33. To prevail on a claim of failure to accommodate, a plaintiff must establish that "(1) the employer knew about her disability; (2) she requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist her in seeking accommodations; and (4) she could have been reasonably accommodated but for the employer's lack of good faith." *Tourtellotte v. Eli Lily & Co.*, 636 F.App'x 831, 849 (3d Cir. 2016) (internal citations omitted).

34. On or about January 2022, at the same time when Plaintiff informed Defendant of her newly diagnosed Disabilities, she also requested that Defendant provide reasonable accommodations in accordance with her family physician's recommendations.

35. Although Plaintiff's family physician's certified recommendations included approval for intermittent leave time, thereby authorizing her to utilize leave time at the beginning of her work shift when medically necessary, when Plaintiff exercised that use, Defendant harshly disciplined Plaintiff without engaging in alternative accommodations.

36. Therefore, Defendant did not make a good faith effort to assist Plaintiff in seeking reasonable accommodations nor in engaging in a meaningful interactive process.

37. Plaintiff could have been readily and reasonably accommodated by Defendant. However, Defendant failed to provide even a modicum of good faith or a willingness to engage in the accommodations process.

38. As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including but not limited to, wage loss, loss of income, further deterioration of her Disabilities, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## RETALIATORY TERMINATION IN VIOLATION
## OF THE ADA AND THE PHRA
## 42 U.S.C. § 1201, *et seq.;* 43 P.S. § 951, *et seq.*

39. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

40. The ADA prohibits employers from retaliating against employees. 42 U.S.C. §12203(a). To establish a claim for retaliation, Plaintiff must prove: "(1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

41. Plaintiff engaged in the protected employee activity of informing Defendant of her Disabilities immediately after receiving her formal diagnosis while simultaneously requesting an accommodation of FMLA Leave, in or around January of 2022. Subsequently, Plaintiff continued to advise Defendant in intervals during the course of her employment with Defendant of her Disabilities and ongoing difficulties stemming from same.

42. Shortly thereafter, On or about November 16, 2022, Defendant placed Plaintiff on suspended pay pending an investigation and on November 21, 2022, Defendant terminated Plaintiff's employment.

43. A causal connection between Plaintiff's protected activity and Defendant's adverse action exists given the temporal relation between Plaintiff's request for accommodations, and the termination of Plaintiff's employment.

44. When viewed in its entirety, the actions by Defendant can only be viewed as retaliation against Plaintiff for invoking her right to seek and obtain reasonable accommodation under the ADA and the PHRA.

45. As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including but not limited to, wage loss, loss of income, further deterioration of her Disability, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT IV
## RETALIATION IN VIOLATION OF THE FMLA
## 29 U.S.C. § 2601 *et seq.*

46. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

47. The FMLA provides, in relevant part, that eligible employees are entitled to 12 workweeks of leave during any 12-month period due to an employee's own serious health condition. 29 U.S.C. § 2612(a)(1).

48. To succeed on an FMLA retaliation claim, a plaintiff must show that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision,

9

and (3) the adverse action was causally related to her invocation of rights. *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014).

49. In January of 2022, Plaintiff invoked her right to leave under the FMLA to utilize intermittent leave time at the beginning of her work shift when medically necessary.

50. Shortly thereafter, Plaintiff began exercising her right to leave under the FMLA in instances where it was medically necessitated.

51. On November 16, 2022, Defendant terminated Plaintiff, even though Plaintiff was qualified to perform her duties as a dispatcher.

52. Given the close temporal proximity between the time when Plaintiff last requested leave pursuant to the FMLA (October 3, 2022) to the time that Plaintiff was terminated (November 16, 2022), in conjunction with the above-mentioned instances where Plaintiff invoked her rights under the FMLA, a natural and sustainable inference arises that Plaintiff was subjected to discriminatory action for exercising her rights under the FMLA.

53. Ultimately, Plaintiff's invocation of her rights to leave time pursuant to the FMLA served as the motivating factor and/or reason for Defendant's decision to terminate her employment.

54. As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including but not limited to, wage loss, loss of income, further deterioration of her Disability, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff seeks the damages set forth in the ad damnum clause of this Complaint, *infra*.

## COUNT V
## INTERFERENCE WITH RIGHTS IN VIOLATION OF THE FMLA
### 29 U.S.C. § 2601 *et seq.*

55. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

56. When employees invoke rights granted under the FMLA, employers may not "interfere with, restrain, or deny the exercise of or attempt to exercise" these rights. Nor may employers "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful." The former provision is generally, if imperfectly, referred to as "interference" whereas the latter is often referred to as "retaliation." *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 301 (3d Cir. 2012) (internal citations omitted).

57. To make a claim of interference under the FMLA, a plaintiff must establish: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008); see also *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)(noting that an interference claim requires an employee to show that he was not only entitled to FMLA benefits but that he was denied those benefits). Under an interference claim, "the employee need not show that he was treated differently than others [, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision." *Sommer*, 461 F.3d at 399 (3d Cir. 2006) (alteration in original) (internal quotation marks omitted). Also, "[b]ecause the FMLA [interference claim] is not about discrimination, a *McDonnell-Douglas* burden-shifting analysis is not required." *Id.*

58. In January of 2022, Plaintiff invoked her right to leave under the FMLA to utilize intermittent leave time at the beginning of her work shift when medically necessary.

59. Shortly thereafter, Plaintiff began exercising her right to leave under the FMLA in instances where it was medically necessitated.

60. Defendant routinely denied Plaintiff the usage of her protected rights which resulted in the issuance of discipline.

61. On November 16, 2022, Defendant terminated Plaintiff, even though Plaintiff was qualified to perform her duties as a dispatcher.

WHEREFORE, Plaintiff seeks the damages set forth in the ad damnum clause of this Complaint, *infra*.

## REQUEST FOR RELIEF

Plaintiff respectfully requests this Honorable Court to enter judgment in her favor, and against Defendant and prays for relief as follows:

1. Declare and find that Defendant committed one or more of the following acts:

    i. Violated the ADA and/or the PHRA in discriminatorily terminating Plaintiff on the basis of Plaintiff's Disabilities;

    ii. Violated the ADA and/or the PHRA in failing to accommodate Plaintiff's Disabilities;

    iii. Violated the ADA and/or the PHRA in retaliatorily terminating Plaintiff for engaging in a protected activity; and/or

    iv. Violated the FMLA in interfering with Plaintiff's rights and retaliating against Plaintiff's exercise of her rights;

2. Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3. Award equitable relief in form of back pay and front pay;

4. Award punitive damages sufficient to deter Defendant from engaging in future conduct of a similar nature;

5. Award attorney's fees; and/or

6. Award pre-judgment and continuing interest as calculated by the Court.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: October 12, 2023          By: _____
Kyle H. Steenland (Pa. I.D. No. 327786)
Erik M. Yurkovich (Pa. I.D. No. 83432)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Facsimile: 412.910.7510
kyle@workersrightslawgroup.com
erik@workersrightslawgroup.com

*Attorney for Plaintiff, Jennifer Lear*

## **VERIFICATION**

    I, Jennifer Lear, have read the foregoing Charge of Discrimination and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: 10 / 12 / 2023

*/s/ Jennifer Lear*
Plaintiff, Jennifer Lear